IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

BURKLEY SAIN,

    Plaintiff,

v.  No. 09-1088

CITY OF JACKSON, TENNESSEE,

    Defendant.

_____

ORDER GRANTING
DEFENDANT'S MOTION FOR PARTIAL DISMISSAL
_____

    The *pro se* Plaintiff, Burkley Sain, brought this action against the Defendant, the City of Jackson, Tennessee (the "City") on April 9, 2009, alleging violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.  Before the Court is the Defendant's motion to dismiss certain portions of Sain's complaint, as well as his claim for punitive damages, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Specifically, the City seeks dismissal of Paragraphs 9, 10(a), 10(d) - (l) and 12(d) of the complaint.  In response to the motion, the Plaintiff conceded he is not entitled to punitive damages and stated he does not oppose dismissal of that claim.  Accordingly, the Plaintiff's claim for punitive damages (Paragraph 12(d)) is DISMISSED.

    Rule 12(b)(6) permits the Court to dismiss a complaint, or portions thereof, for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In order to survive a Rule 12(b)(6) motion, the plaintiff "must allege facts that, if accepted as true, are sufficient 'to raise a right to relief above the speculative level' and to 'state a claim to relief that is plausible on its face.'"  Hensley Mfg. v. ProPride, Inc., ___ F.3d ___, 2009 WL 2778220, at *3 (6th Cir. Sept. 3, 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929

(2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "And although [the Court] must accept all well-pleaded factual allegations in the complaint as true, [it] need not 'accept as true a legal conclusion couched as a factual allegation.'" Hensley Mfg., 2009 WL 2778220, at *3 (quoting Twombly, 550 U.S. at 555, 127 S. Ct. 1955)).

The Defendant contends Sain failed to exhaust his administrative remedies as to the claims set forth in paragraphs 9, 10(a) and 10(d) through (l) of his complaint. "In Title VII, Congress set up an elaborate administrative procedure, implemented through the [Equal Employment Opportunity Commission ("EEOC")], that is designed to assist in the investigation of claims of racial discrimination in the workplace and to work towards the resolution of these claims through conciliation rather than litigation." Granderson v. Univ. of Mich., 211 F.App'x 398, 400 (6th Cir. 2006). An individual seeking to bring a discrimination claim under Title VII in federal court must first exhaust his administrative remedies. Scott v. Eastman Chem. Co., 275 F.App'x 466, 470-71 (6th Cir. 2008). However, "the requirement is not meant to be overly rigid, nor should it result in the restriction of subsequent complaints based on procedural technicalities or the failure of the charges to contain the exact wording which might be required in a judicial pleading." Id. at 471 (quoting Randolph v. Ohio Dep't of Youth Servs., 453 F.3d 724, 732 (6th Cir. 2006)) (internal quotation marks omitted). Thus, "the EEOC complaint should be liberally construed to encompass all claims reasonably expected to grow out of the charge of discrimination." Randolph, 453 F.3d at 732 (citation and internal quotation marks omitted). "[W]here facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is

not precluded from bringing suit on that claim." Dixon v. Ashcroft, 392 F.3d 212, 217 (6th Cir. 2004) (citing Weigel v. Baptist Hosp. of E. Tenn., 302 F.3d 367, 380 (6th Cir. 2002)). Moreover, "[w]hen the EEOC investigation of one charge *in fact* reveals evidence of a different type of discrimination against the plaintiff, a lawsuit based on the newly understood claim will not be barred." Davis v. Sodexho, Cumberland Coll. Cafeteria, 157 F.3d 460, 463 (6th Cir. 1998) (emphasis in original).

The Sixth Circuit requires a "broad reading of the charge because most Title VII claimants are unschooled in the technicalities of the law and proceed without counsel." Ang v. Procter & Gamble Co., 932 F.2d 540, 546 (6th Cir. 1991). This does not mean, however, that "plaintiffs are excused from filing charges on a particular discrimination claim before suing in federal court." Johnson v. Rumsfeld, 238 F.App'x 105, 108 (6th Cir. 2007) (quoting Davis, 157 F.3d at 463).

In the Charge of Discrimination filed with the EEOC on February 26, 2008 against the City, a copy of which has been submitted to the Court, Sain checked the box labeled "race" to identify the nature of the discrimination alleged and indicated that the discrimination complained of occurred from August 3, 2007 to February 22, 2008. Since there is nothing to suggest the Plaintiff was represented by counsel when he filed the charge, the Court is to read the charge broadly. In the narrative portion of the form, he stated as follows:

> I have been employed with the above named company since April 1989. I was hired as a Police Officer, my current title is Police Sergeant and my additional duty is Field Training Program Coordinator.
>
> On January 11, 2008, I disciplined Officer Halford (White/Male) for failing to comply with a direct order. Steve Overton, Lieutenant (W/M), suggested that the disciplinary order be changed because it was too harsh. Lt. Overton and Commander Mays preferred a reduction in Officer Halford's suspension from the Self Defense Team because of money the department had invested in his training. On January 24, the hearing summary was submitted I felt compelled to reduce the disciplinary

>action.  Furthermore, Lt. Overton called several closed door meetings that I had to attend failure to do so would have resulted in disciplinary actions against me.
>
>I believe I was intimidated and harassed into changing the disciplinary report because of my race (Black), in violation of Title VII of the Civil Rights Act of 1964, as amended.

Paragraph 9 of the complaint alleges that, because of Sain's race, the City failed to promote him and "subjected plaintiff to a hostile work environment and retaliated against the same plaintiff with the attempt to terminate employment." (Compl. ¶ 9.)  Paragraph 10(a) avers that the Plaintiff was intimidated and oppressed for disciplining the white officer and that on January 23, 2008 he was forwarded an offensive e-mail from an employee of the Defendant referencing "Father Joseph."[1] Subparagraphs (d) through (l) of paragraph 10 assert that (1) Plaintiff was denied a promotion in July 2008 in retaliation for filing the February 26, 2008 EEOC charge; (2) Sain was subjected to criticism he believed to be unwarranted in July 2008; (3) Sain and another black employee were, in late July 2008, placed in a subordinate role in programs they had enhanced; (4) in August 2008 he was advised that a police lieutenant who worked for the City had referred to the black children participating in a summer program run by the Defendant, of which Sain's daughter was one, as "low-life thug children" in a written memorandum and the incident was not properly investigated; (5) on September 22, 2008, the Plaintiff was retaliated against for filing the EEOC charge when a captain disagreed with him about a matter of procedure; (6) on October 11, 2008, Officer Halford was

---

[1]According to Sain, "'Father Joseph' is a hostile act of sarcasm that a white priest (missionary) had sex with a native black woman who gave birth to a child that appeared to be white.  The flip side is that 'Father Joseph' implies that a native black male had sex with a female goat and that the goat gave birth to a solid black goat (kid).  In this hostile act of sarcasm 'Father Joseph' points out to the black native male that it would not be appropriate for him to question or reveal the fact that he had fathered a child with a native black woman because the fact would be revealed that the native black man had been having sex with animals and that action resulted in the birth of a black goat (kid)."

returned to the field training program over Sain's objections; (7) on October 21, 2008, a charge was made against another officer that the Plaintiff, after interviewing the officer, concluded was unwarranted, making Sain "an unfortunate victim and unwilling vessel" of a professional assault against the other officer; and (8) on January 31, 2009, a flyer was placed under a black officer's posted "Employee of the Month" photograph in which the officer's vehicle was referred to as the "Ghetto Sled of the Month February 2009."

The EEOC charge filed by Sain made no mention of the failure to promote, hostile work environment or retaliation claims averred in the complaint. Nor were the "continuing action" or "retaliation" boxes checked on the charge form. Thus, it is the position of the Defendant that these claims have not been exhausted.

The Court recognizes that its inquiry turns not solely on whether Sain checked the appropriate box on the EEOC complaint form but, rather, on whether he alleged sufficient facts to put the EEOC on notice of his failure to promote, hostile work environment and retaliation claims. *See* Ashcroft, 392 F.3d at 217. The Court finds that he did not. The charge referenced the following discrete acts: (1) compelling Sain to change a disciplinary report against a white employee in order to reduce his punishment, and (2) requiring the Plaintiff to attend closed door meetings or be disciplined. Nothing about these acts would have put the EEOC on notice of claims for failure to promote, hostile work environment or retaliation.[2] Nor can the broader claim contained in the last sentence of the narrative in which Sain accused the City of "intimidat[ing] and harass[ing] [him] into changing the disciplinary report" be construed as having notified the EEOC of claims of retaliation

---

[2]Although the Plaintiff insists in his response to the motion that he submitted the information contained in paragraphs 9 and 10 to the EEOC, he offers no indication of when he did so.

5

or hostile work environment. First, forcing Sain to change the disciplinary report cannot simultaneously be the discriminatory act *and* the retaliation, as a retaliation claim requires a causal connection between two *separate* events. *See* Lindsay v. Yates, 578 F.3d 407, 418 (6th Cir. 2009) (a retaliation claimant must establish a causal connection between a protected activity and an employer's adverse action). Second, any hostile work environment claim based on this language would necessarily be linked solely to the single, specific incident of making Sain change the report, which occurred over a period of, at most, thirteen days. This is not sufficient to support a hostile work environment claim which requires a showing of severe or pervasive conduct. *See* Ulmer v. Dana Corp., 200 F. Supp. 2d 804, 813-14 (N.D. Ohio 2002), *aff'd* 115 F.App'x 787 (6th Cir. 2004) (allegation in EEOC charge of racial harassment did not give rise to hostile work environment claim where harassment involved one specific incident, which is insufficient to establish severe or pervasive conduct necessary for hostile work environment claims). Indeed, to find otherwise would result in nearly every discrimination claim including a hostile work environment claim.

Thus, it is the view of the Court that permitting Sain to litigate his claims of failure to promote, retaliation and hostile work environment "after failing to present them to the EEOC would deprive the [Defendant] of the notice to which it is entitled under the law and would frustrate the statutory scheme . . ." *See* Patton v. Potter, No. 1:03CV1230, 2005 WL 3481530, at *4 (N.D. Ohio Dec. 15, 2005) (citation and internal quotation marks omitted). Nor could his claims for failure to promote, hostile work environment or retaliation reasonably be expected to grow out of the EEOC charge submitted by Sain. *See* Ashcroft, 392 F.3d at 217, *supra.*

In fact, the Plaintiff appears to acknowledge in his response to the motion that these claims have not been exhausted, but argues that they should be salvaged by the doctrine of equitable tolling.

The timely filing requirement is "subject to waiver, estoppel, and equitable tolling."  Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, 102 S. Ct. 1127, 1132, 71 L. Ed. 2d 234 (1982); Mitchell v. Chapman, 343 F.3d 811, 820 (6th Cir. 2003), *cert. denied*, 542 U.S. 937, 124 S. Ct. 2908, 159 L. Ed. 2d 813 (2004).  As the Sixth Circuit articulated in Dixon v. Gonzales, 481 F.3d 324 (6th Cir. 2007), *reh'g denied* (May 16, 2007),

> The equitable tolling doctrine does not delay the start of the limitations clock, but rather halts its ticking after the limitations period has accrued.  Thus, in the Title VII context, the limitations period begins to run when the adverse employment decision is communicated to the plaintiff, but may be tolled by equitable circumstances.
>
> The Supreme Court has observed that equitable tolling is typically applied only sparingly.  The following five factors are relevant to a determination of whether tolling should be allowed: (1) lack of notice of the filing requirement; (2) lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement.  The foregoing factors are not exclusive and the tolling decision should be made on a case-by-case basis.

Gonzales, 481 F.3d at 330-31 (internal citations and quotation marks omitted).  Whether to apply the equitable tolling doctrine rests in the discretion of the trial court.  Id. at 331.  As the Plaintiff has offered no evidence whatever from which the Court could infer that any of the factors set forth above exist here, the Court declines to apply the doctrine.

Based on the foregoing, the Defendant's motion to dismiss the Plaintiff's claims for punitive damages, failure to promote, hostile work environment and retaliation is GRANTED.  Paragraphs 9, 10(a), 10(d) - (l) and 12(d) of the complaint are therefore DISMISSED.

      IT IS SO ORDERED this 6th day of October, 2009.

                                      s/ J. DANIEL BREEN
                                      UNITED STATES DISTRICT JUDGE